669 So.2d 700 (1996)
STATE in the Interest of CW, RW, JW, and JW, Plaintiffs-Appellees,
v.
Melinda WOMACK & Ricky Womack, Sr., Defendants-Appellants.
No. 28310-JA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
*702 Michelle A. Dufour, E. Paul Young, Joseph S. Woodley, Shreveport, for Appellants.
Audie L. Jones, Pamela Harper, Rollin W. Cole, Shreveport, for Appellees.
Before HIGHTOWER and WILLIAMS, JJ., and CLARK, J., Pro Tem.
CLARK, Judge Pro Tem.
The appellants, Melinda Womack and Ricky Womack, Jr., appeal from the juvenile court's adjudication of their children, CW, RW, JW, and JW, as in need of care. We affirm in part and reverse in part.

Facts
In September of 1994, CW, date of birth September 14, 1990, was staying with Hazel Boyles, her great-aunt, in Jacksonville, Florida. Ms. Boyles testified that CW came to stay with her family because CW's great-grandfather, Jim Womack, had expressed concern that something had happened to CW. Once in Jacksonville, CW exhibited some inappropriate sexual behavior and, when Ms. Boyles was giving CW a bath, she noticed that CW's vagina was red.
Ms. Boyles notified the Florida Health and Rehabilitation Services to report her suspicions of sexual abuse of CW. Susan Oliver, a child protection worker with the Children's Crisis Center, interviewed CW on October 5, 1994. This interview was videotaped and observed by Roseanne White and Chandor Arbinger, child protection investigators. During this interview, CW indicated that her father had sexually abused her.
In October of 1994, Ms. Womack went to Jacksonville with her boys, JW, JW, and RW, to live with the Boyles. Ms. Boyles discussed CW's allegations with Ms. Womack. Ms. Womack then discussed CW's allegations with Louisiana Child Protection Worker Maria Littleton over the phone while she was in Florida. Ms. Womack told Ms. Littleton that CW had not changed her story and that she intended to stay in Florida and not reconcile with her husband. Ms. Littleton advised Ms. Womack to remain in Florida until the investigation was complete.
On October 31, 1994, Ms. Littleton discovered that Ms. Womack had returned to Shreveport with the boys. CW stayed in Jacksonville to continue counseling. However, in late November, Ms. Littleton discovered that CW had returned to Shreveport and was living with her mother and father. This action was initiated by the state and on December 13, 1994, all four children were removed from the home and placed in the custody of the state.
A trial was held in April and May of 1994. Based on the evidence adduced at the trial, the juvenile court found that the state proved by a preponderance of the evidence that Ricky Womack sexually abused CW, that Melinda Womack neglected CW by placing her at undue risk of physical and emotional harm, and that the appellants neglected RW, JW, and JW by placing them in a situation where there was an undue risk of physical and sexual abuse. Accordingly, the juvenile court adjudicated all four children to be in *703 need of care and ordered the children to remain in state custody.
A disposition hearing was held on June 9, 1995. Based on the evidence adduced at this hearing, the juvenile court approved the case plan submitted by the state, with certain limited exceptions expressed orally, and continued the children in state custody. This appeal follows.

Discussion

The Burden of Proof
The parents argue that the Louisiana Constitution requires the burden of proof in child in need of care proceedings to be clear and convincing evidence. In support of this argument, the parents cite State in the Interest of BS v. PS, 542 So.2d 1163 (La.App. 2d Cir.1989). The court in this case noted that the jurisprudence was not uniform as to the standard of proof in child in need of care proceedings, but did not resolve the conflict. Furthermore, this case was decided prior to the adoption of the Louisiana Children's Code. The Children's Code has made it clear that the state has the burden of proving the allegations in child in need of care proceedings by a preponderance of the evidence. La.Ch.C. Art. 665. The trial court did not err in applying this standard of proof.

Admissibility of the videotaped interview
The parents argue that the videotape of CW, made by Florida case workers on October 5, 1994, is inadmissable in that it did not meet the requirements for the admissibility of videotaped interviews set forth in the Louisiana Children's Code.
First, the parents argue that the interview was not authorized by the court as required by La. Ch.C. Art. 324. Second, the parents argue that the tape did not meet the requirements of La. Ch.C. Arts. 326 and 327.
Article 324 provides as follows:
A court exercising juvenile jurisdiction may, on its own motion or on the motion of the district attorney, a parish welfare unit or agency, or the department, require that a statement of a child be recorded on videotape in conformity with Article 326.
Article 326 requires that in order for a videotape to be competent evidence, all of the following requirements must be satisfactorily proved:
(1) Such electronic recording was voluntarily made by the child.
(2) No relative of the child was present in the room in which the recording was made.
(3) No attorney for either party was present when the statement was made.
(4) Such recording was not made of answers to questions calculated to lead the child to make any particular statement.
(5) Such recording is both visual and oral and is recorded on film or videotape or by other electronic means.
(6) Such recording is accurate, has not been altered, and reflects what the child said.
(7) The taking of the child's statement was supervised by a physician, a board-certified social worker, a law enforcement officer, a licensed psychologist, or an authorized representative of the department.
(8) Every voice on the recording is identified.
Article 327 provides that if all of the requirements in Article 326 are met, the videotape is admissible if all of the following occur:
(1) The parties to the proceeding are afforded an opportunity to view the recording before it is offered into evidence.
(2) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party.
(3) The child is available to testify.
The juvenile court found that the state substantially complied with all the requirements of Articles 326 and 327. It found that the child was physically available to testify and that, based on the videotape and Dr. Vigen's testimony, the child was competent to testify. The juvenile court also specifically stated that the videotape was both audibly and visually understandable to the court.[1]
*704 While we recognize that there was no authorization by a Louisiana court as required by Article 324, we find that the videotaped statement is trustworthy and reliable. The initial complaint of sexual abuse was made in Florida. Appropriately, the Florida authorities began the investigation, including the taking of the videotaped statement, under Florida law and procedure. There was no evidence adduced that the videotape was not made in accordance with Florida law.
Furthermore, the state made a reasonable effort to establish the facts to which the videotaped statement relates. The state put forth CW's therapists who testified that CW related essentially the same facts and circumstances of the abuse. The state also provided the parents with an opportunity to view the videotape prior to trial.
We agree with the trial court that the state substantially complied with the requirements of Articles 326 and 327. The video shows that the statements of the child were voluntarily made. The recording is visually and audibly understandable and accurately reflects what the child said. The recording was made with no relatives or attorneys present. We find that Ms. Oliver did not lead the child to make a particular statement.
We also find that the videotape was in compliance with Article 326(A)(7) which requires, in relevant part, that the taking of the child's statement be supervised by "an authorized representative of the department." In the chapter authorizing the videotaping of interviews, "department" is defined as the Department of Social Services. This definition is not limited to the Louisiana Department of Social Services as is the definition found in Title VI, Chapter 1 of the Children's Code. La. Ch.C. Art. 603(10) defines department as "the Louisiana Department of Social Services." If the legislators had wished to limit the taking of videotaped statements to the Louisiana Department of Social Services it would have specifically defined it as such. We read these articles as allowing an authorized representative of another state's department of social services to supervise the taping of statements.
Ms. Oliver testified that she is trained to conduct videotaped interviews of child sex abuse victims and is authorized by Florida's child protection agency to conduct such interviews. Thus, she is an "authorized representative of the department" as defined in this chapter of the Louisiana Children's Code.
As for the admissibility requirements under Article 327, all the parties were afforded an opportunity to view the tape prior to trial and Ms. Oliver testified at trial. Although the child was present in the courthouse and available to testify, neither parent chose to call her.
We also find that the trial court did not err in finding that, based on the videotape and the expert testimony, CW was competent to testify. A trial court can rely on expert testimony of doctors in determining competency of a prospective child witness in child sex abuse prosecution. State v. Troulliet, 94-183 (La.App. 5 Cir. 9/14/94), 643 So.2d 1267. In Troulliet, the trial court also personally questioned the prospective child witness in addition to relying on the testimony of the child's therapist. In the present case, although the trial court did not personally question CW, it did have the opportunity to witness her demeanor by way of the videotape. The trial court has great discretion in determining the competency of a witness. A judge's determination of competency should not be overturned absent manifest error. State v. Allen, 26,547 (La.App. 2 Cir. 12/7/94), 647 So.2d 428.
Based on the foregoing reasons, we find that the videotape was trustworthy and reliable and thus was properly admitted into evidence.

Admissibility of hearsay statements by Ms. Boyles
At trial, the state offered a proffer of Ms. Boyles' testimony regarding CW's statements made to Ms. Boyles concerning the sexual abuse allegedly perpetrated by Mr. Womack. The juvenile court did not consider this testimony in adjudicating the children in need of care.
*705 However, the trial court did conditionally admit Ms. Boyles' testimony concerning CW's first report of the sexual abuse and the names of the alleged perpetrators. The court conditioned the admission of these statements upon the state laying additional foundation.[2] However, the trial court never ruled on the sufficiency of the state's foundation and these statements were never admitted into evidence. Even if these statements were considered by the trial court as substantive evidence, this was a harmless error. Ms. Boyles' testimony was cumulative as the videotape and Dr. Vigen's testimony was consistent with CW's statements to Ms. Boyles. Accordingly, this assignment of error is without error.

Adjudication of CW as a child in need of care
The parents argue that the juvenile court erred in finding that Mr. Womack sexually abused CW and that Ms. Womack neglected CW. This argument is meritless.
La. Ch.C. Art. 606 sets forth the grounds for a child in need of care as a child who is a victim of abuse or neglect. La. Ch.C. Art. 603(1) defines abuse as:
... any one of the following acts which seriously endanger the physical, mental or emotional health of the child: ...
(c) The involvement of the child in any sexual act with a parent or any other person, or the aiding or toleration by the parent or caretaker of the child's sexual involvement with any other person
. . . .
Neglect is defined in La. Ch.C. Art. 603(14) as:
... the refusal or failure of a parent or caretaker to supply the child with necessary... care ... for any injury, illness, or condition of the child, as a result of which the child's physical, mental or emotional health is substantially threatened or impaired....
In the present case, the record supports the finding that Mr. Womack sexually abused CW and that Ms. Womack neglected CW. In the videotaped interview conducted by Susan Oliver, CW told Ms. Oliver that "Daddy bothers me down there" at which time she pointed to her vaginal area. CW stated that this occurred "a lot of times." Using anatomically correct dolls, CW showed how "Daddy" laid on top of her, put his "thing" in her private parts, and moved up and down "real hard." CW also showed Ms. Oliver how "Daddy" licked her private parts with his tongue. When asked about specific incidents, CW related only one incident which she said occurred in South Carolina. CW stated that she and her father were in the bedroom and her mother was in the kitchen. CW stated that her father took her panties off and his pants were down. She stated that her mother walked in the room and turned on the lights. CW stated that her father was on top of her when her mother walked into the room.
CW attended one counseling session with Mary Ann Chapman while in Florida. During the interview, CW told Ms. Chapman that "Daddy put his TT in my private part." She indicated with dolls how this was done. CW then placed the mama doll in the doorway of the doll playhouse and stated "Mama thought it was funny when Daddy was messing with me." Ms. Chapman testified that CW was consistent in the details of this incident throughout the interview.
Dr. Susan Vigen, an expert in child psychology, was CW's therapist at the time of the trial. Dr. Vigen had seen CW for seven sessions. Dr. Vigen testified that CW stated several times during these sessions that her real daddy had kissed her private parts and had messed with her. Dr. Vigen never questioned CW about whom her real daddy was, however, during play therapy, CW often identified bear dolls as real mama and daddy bears and Mama Linda and Daddy Guy bears (her foster parents). It was Dr. Vigen's opinion that CW had been sexually abused by her father or a father figure.
CW's statements to Ms. Oliver and to Ms. Chapman indicate that Ms. Womack was aware of the abuse yet did nothing to protect CW from further abuse. Furthermore, after Ms. Womack was made aware of CW's allegations that her father sexually abused her, *706 Ms. Womack allowed CW to return to Shreveport and live with her father. This is also evidence of neglect in that Ms. Womack's actions show a refusal to provide the necessary care to CW to prevent another occurrence of sexual abuse.
Based on the evidence outlined above and presented at trial, we conclude that the court was correct in adjudicating CW as a child in need of care.

Adjudication of RW, JW, and JW as children in need of care
The parents argue that there was no evidence of abuse or neglect of the minor boys, RW, JW, and JW. We agree.
The testimony at trial was focused on the sexual abuse of CW. Although the juvenile court found that the boys were placed at an undue risk of physical and sexual abuse, there was no evidence of actual or threatened abuse or neglect. Nor was any evidence introduced as to the mental, physical, or emotional condition of the boys. The state did not offer any testimony on how the abuse of CW affected the boys. Due to this complete lack of evidence, we cannot infer any abuse or neglect of RW, JW, and JW. Accordingly, we vacate the juvenile court's adjudication of the boys as children in need of care.

Admissibility of hearsay statements at the disposition hearing
The parents argue that the dispositional hearing was based primarily on hearsay, in the form of the case manager's predisposition report, and thus was in violation of their constitutional rights to due process. U.S. Const.Amend. XIV, and La. Const. Art. I, Sec. 2. The juvenile court held that in this case there was no violation of either the Louisiana Constitution or the United States Constitution.
Louisiana Children's Code Article 680, entitled "Disposition hearing; evidence," provides as follows:
The court may consider the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state relating to the proper disposition. The court may consider evidence which would not be admissible at the adjudication hearing.
In order to determine the placement of a child, the juvenile court must be made aware of all the circumstances of the child's situation. The legislature clearly understood this when it determined that a juvenile court may consider hearsay evidence, in the form of a predispositional investigation report and reports of mental evaluations, and other evidence which would not be admissible at the adjudication hearing. La. Ch.C. Art. 680. Furthermore, the provisions of the Louisiana Code of Evidence, including the provisions concerning the exclusion of hearsay, are inapplicable to disposition hearings in juvenile cases. La.C.E. Art. 1101(C)(3).
A judgment of disposition is not a permanent termination of parental rights. In fact, the disposition must be reviewed within nine to twelve months after the disposition hearing and dispositional reviews must be held at least once every twelve months thereafter. La. Ch.C. Art. 702. Furthermore, the court may modify a judgment of disposition on its own motion or upon a motion of the district attorney, the department, the child or his parents. La. Ch.C. Art. 714.
Considering the non-permanency of the judgment of disposition, we cannot say that the admission of hearsay evidence at this disposition hearing violated the parents' right to due process. The trial court did not err in allowing the report of the case manager into evidence at the disposition hearing.

Conclusion
For the reasons stated above, the adjudication of CW as a child in need of care is affirmed. The adjudication of RW, JW, and JW as children in need of care is vacated. To the extent provided by law, half the costs are assessed to the appellee and half are assessed equally among the appellants.
AFFIRMED IN PART AND VACATED IN PART.
NOTES
[1] The juvenile court also found that the videotape was admissible under Louisiana Code of Evidence Article 804(B)(6) in that the state made a reasonable effort to establish the facts evidenced by the tape and notified the parents prior to trial of the existence of the tape.
[2] Ms. Boyles' testimony was taken out of order as she had traveled from Florida to testify.