| PEATROSS, J.
This appeal arises out of a child in need of care proceeding wherein the trial court adjudicated KB, an infant, as a child in need of care ordering her custody to remain with the Department of Social Services (“the Department”), but refused to adjudicate KB’s two older siblings, TB and CB, ages two and four years respectively, as children in need of care and allowed their custody to remain with the mother. The State of Louisiana, through the Department, appeals the trial court’s dismissal of its petition as to TB and CB. For the reasons stated herein, we reverse the judgment of the trial court and remand the matter to the trial court for disposition pursuant to La. Children’s Code art. 678, et seq.

FACTS and PROCEDURAL BACKGROUND

On March 20, 1998, the mother of KB, TB and CB contacted the Department seeking assistance in caring for the three children while she sought medical attention for depression. At that time, KB was only eight days old, TB was one year old and CB was three years old. Since there were no family members or friends to care for the children, they were taken into protective custody by the Department. On April 23, 1998, the Department filed a petition seeking to adjudicate the three children as children in need of care. On April 27, 1998, counsel for the mother and the children moved to dismiss the petition; and, over objection of the Department, the *151 trial court dismissed the petition and the children were returned to the mother.
On August 6, 1998, the Department received a report that KB had been neglected by the mother in that the mother had taken the infant off of formula and was feeding her a mixture of evaporated milk and water. The Department sought and was granted an instanter order seeking custody of KB. Child protection worker Rosie Ashley was assigned to investigate. As a result of Ms. Ashley’s investigation, the Department filed a verified complaint on August 14, 1998. At lathe continued custody hearing on August 21, 1998, Ms. Ashley testified that KB had been admitted to the LSU Medical Center (“LSUMC”) pediatric intensive care unit for severe seizures and difficulty breathing. The change in diet had resulted in a low sodium level in the infant which caused her to experience the seizures. Dr. Mus-tapha Kibirige, chief resident and opthal-mologist, examined KB and found peri-retinal hemorrhaging in both eyes. Dr. Ann Springer, a pediatrician with expertise in child abuse and Shaken Baby Syndrome, also examined KB and found that the infant had increased muscle tone. Both doctors were of the opinion that KB’s injuries were consistent with Shaken Baby Syndrome.
Ms. Ashley also testified that she interviewed KB’s maternal great-grandmother who stated that KB’s mother gets upset easily and depressed often. Although the trial court found reasonable grounds to adjudicate KB as a child in need of care, it ordered that KB' be returned to the custody of her mother with instructions to the mother concerning the feeding and disciplining of KB; that the mother submit to psychological evaluation and participate in counseling, including anger management and. parenting classes; and that the Department supervise the case, make unscheduled visits to the home and evaluate the child mentally and/or psychiatrically as the Department believed necessary.
On September 22, 1998, a second petition for adjudication as a child in need of care was filed by the Department as to KB. A verified complaint was filed and order signed on September 25, 1998, with the trial set for October 26,1998.
In the meantime, pursuant to the trial court’s order of August 21, 1998, on September 17, 1998, a psychological evaluation was performed on the mother by Dr. Daniel Lonowski. On September 24, 1998, after completion of his evaluation, Dr. Lonowski telephoned the Department to report his findings. During this conversation with Ms. Ashley, Dr. Lonowski expressed his concern for the safety and welfare of all three children. Based on Dr. Lonowski’s concerns, the | sDepartment sought and received an instanter order for KB, TB and CB placing them in the protective custody of the Department.[1]
On September 28, 1998, at the hearing on continued custody, Ms. Ashley testified that Dr. Lonowski expressed his concern about the safety of all three children and that his evaluation revealed that the mother was at a high statistical risk to mistreat children or physically abuse children and that she was in need of immediate treatment for depression. Ms. Ashley also testified that the mother felt overwhelmed by the services offered to her by the Department and the scheduling of all the appointments necessary to take care of and provide for her children. At the conclusion of the hearing, the trial court found that all three children were in need of care and ordered the continued custody of KB, but ordered that TB and CB be returned to the custody of the mother on October 23, 1998. The order also required the mother to attend counseling sessions for her depression and parenting classes.
*152 On October 21, 1998, the Department filed a rule to show cause for. continued custody seeking to keep custody of TB and CB and alleging that the mother had not complied with the orders of the trial court regarding counseling and parenting classes. On October 22, 1998, the Department filed an amended and supplemental petition seeking to have TB and CB adjudicated as children in need of care. The hearing of the rule was ultimately joined with the adjudication trial which commenced November 19,1998.
Evidence was introduced at the adjudication trial regarding the abuse and neglect of KB and the likelihood that the peri-retinal bleeding was due to Shaken Baby Syndrome. In addition to Ms. Ashley’s testimony, which mirrored the Rtestimony given at the previous hearing, expert testimony was adduced regarding KB’s injuries. Dr. Kibirige was accepted by the trial court as an expert in general medicine and Dr. Springer as an expert in Shaken Baby Syndrome. Both doctors expressed an opinion that KB’s injuries were due to Shaken Baby Syndrome. Dr. Mary McWilliams was accepted by the trial court as an expert in neurology. Dr. McWilliams testified that KB had increased muscle tone in both legs which, in her opinion, was due to shaking.
Dr. Lonowski was accepted by the trial court as an expert in clinical psychology. Dr. Lonowski testified regarding his psychological evaluation of the mother. The evaluation consisted of a combination of interviews; social history taking; mental status; the Melon Clinical Multi-Axial Inventory (“MCMI”), which is a screening for personality disorders; Child Abuse Potential Inventory; and the Paradione Stress Index (“PSI”). Dr. Lonowski testified that the MCMI indicated that the mother had several elevations on the MCMI scale which were consistent with psychological and/or personality disturbances. The three elevations were in the areas of the withdrawn or schizoid/antisocial scale, the avoidant scale and the passive-aggressive or passive-dependent scale. In Dr. Lonowski’s opinion, a person exhibiting these elevations' would have trouble dealing with everyday life activities and the potential to abuse children is higher in persons with these characteristics.
The PSI examines the relationship between a parent and child. Dr. Lonowski testified that the mother’s results on the PSI indicated that she is socially isolated and does not have sufficient support to allow her any relief from parenting stress. In his opinion, the probability that she would physically abuse the children was, therefore, increased.
While the trial court would not allow testimony as to the specific results of the Child Abuse Potential Inventory, Dr. Lo-nowski testified that the results of each | Bof the tests he performed, viewed together, caused him grave concern for the health and well-being of the children in the home.
The trial court found KB to be a child in need of care stating it was “convinced that the preponderance of the evidence supports that the child was the victim of shaking — or rather, manifested the Shaken Baby Syndrome.” The trial court, however, found the evidence insufficient to support adjudication of TB and CB as children in need of care and, therefore, returned them to the custody of their mother. For the reasons set forth herein, the judgment of the trial court is reversed as to the failure to adjudicate TB and CB as children in need of care and the matter is remanded to the trial court for disposition pursuant to La. Children’s Code art. 678, et seq.

DISCUSSION

Louisiana Children’s Code art. 601, Purpose, states in pertinent part:
The purpose of this Title is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others ... [tjhis Title shall ... authorize the protective and preventive intervention *153 needed to safeguard and enhance the health and well-being of children.
In 1995, the legislature added the following ground to the list of allegations which will support a petition to adjudicate a child in need of care:
(5) The conduct of the parent, either as a principal or accessory, constitutes a crime against the child or against any other child of that parent.
La. Children’s Code art. 606(A)(5). A “crime against the child” is defined in article 603(9) as follows:
Crime against the child shall include the commission of or the attempted commission of any of the following crimes against the child as provided by federal or state statutes:
(b) Battery....
|fi(o) Cruelty to juveniles....
Although it was convinced that KB was a victim of Shaken Baby Syndrome, with regard to TB and CB, the trial court found that the Department had not met its burden of proving the elements of an offense against KB; and, therefore, it was constrained from finding TB and CB children in need of care. The Department argues that, under article 606(A)(5), the shaking of KB constitutes a “crime against any other child of that parent” thereby allowing KB’s siblings to be adjudicated as children in need of care. We agree.
The legislature’s addition of subsection (5) to article 606(A) in 1995 evidences an attempt to provide an intermediate ground that would allow the Department to step in and protect children who may be at a substantial risk of being abused or neglected without having suffered actual abuse.[2] Reading article 606(A)(5) literally, we find that a parent violently shaking his or her baby, inflicting injuries which rise to the level of Shaken Baby Syndrome, constitutes a crime against the child” within the meaning of that article. It is inescapable that the violent shaking of an infant rises to the level of a battery, one of the enumerated “crimes against the child.” La. Children’s Code art. 603(9). Limiting our holding to the particular facts of this case, our review of the record discloses sufficient evidence to adjudicate TB and CB as children in need of care. We, therefore, reverse the trial court’s dismissal of the petition for adjudication as regards TB and CB. Since we find the two children to be in need of care, pursuant to article 678, et seq, of the Children’s Code, we remand the matter for a 17disposition hearing before the trial court to determine the appropriate placement of the children.

CONCLUSION

For the reasons stated herein, the judgment of the trial court is reversed and the matter remanded to the trial court for disposition in accordance with La. Children’s Code art. 678, et seq.
REVERSED AND REMANDED FOR DISPOSITION.

. The instanter order following Dr. Lonow-ski’s evaluation is the first action taken by the Department with regard to TB and CB. Until this time, TB and CB had remained in the custody of the mother.

. The mother relies on State, In Interest of CW, RW, JW v. Womack, 28,310 (La.App.2d Cir.2/28/96), 669 So.2d 700, in arguing that adjudication of a child as one in need of care requires actual or threatened abuse. We note that the addition of subsection (5) to article 606(A) was not yet in effect at the time of the adjudication trial in the Womack case. Since subsection (5) was a substantive change in the law, it was not applied retroactively on appeal in that case. As such, our decision in Wom-ack does not control our decision in the instant case.