MOORE, J.
 

 I , Johnny Carter, the biological father of four-month-old ERL, III (“ERL”), appeals a judgment of disposition finding the child in need of care and continuing him in the
 
 *287
 
 custody of the Office of Community Services. We affirm.
 

 Procedural Background
 

 ERL was born May 29, 2008. On June 18, his mother, Falice Fisher, took him to the LSU Children’s Clinic for his two-week checkup. Doctors discovered that ERL had a metaphyseal corner fracture to his right foot, an injury indicative of child abuse (pulling on an infant’s leg and foot with great force). Falice denied that she or her live-in boyfriend, Eddie Lane Jr., did anything to the child, but admitted that she had just got out of prison, that she had two older children who were not living with her, and that despite a diagnosis of paranoid schizophrenia, she was not taking her prescribed medication. Eddie also denied harming ERL, insisting he was the child’s biological father even though another man, Johnny Carter, claimed to be. At the time, Johnny was in jail for hitting Falice while she was pregnant with ERL.
 

 On this information, OCS obtained an instanter order taking temporary custody of ERL. The child was placed in foster care and underwent treatment for the fracture, malnutrition and acid reflux. Two days later, Bossier City police arrested Falice for cruelty to a juvenile; she later admitted getting angry with ERL and pulling his leg. For the remainder of the proceedings, she has been in the Rich-land Detention Center in Rayville.
 

 [{.Johnny got out of jail in early July and went to OCS, claiming he was the father of ERL. He admitted he had five other children, all of whom he claimed to take care of; that he had been in jail for hitting Falice; that he was drawing SSI because of a learning disability; and that he could not take in ERL, but his godmother Dorothy and his sister Lisa planned to help him raise the child. On this information, OCS filed the instant petition to declare ERL a child in need of care.
 

 At an adjudication hearing on August 25, Falice and Eddie stipulated that ERL was a child in need of care. Johnny also stipulated to this effect but maintained that he was not involved in any of the events leading to ERL’s removal.
 

 An OCS child welfare specialist, Camie Barganier, prepared a report and case plan. These stated that the objective was reunification, but that Falice did not participate because she was in prison. According to the report, because Johnny was a “non-offending parent,” Ms. Barganier “asked permission” to do a background check on him. This revealed a history of drug abuse, so she asked him to submit to urine and hair screening; he agreed, and the tests showed positive for cocaine. Johnny then asked Ms. Barganier to consider another sister of his, Christine, and Christine’s daughter Marshay, as placement for ERL. After talking to these two women, however, Ms. Barganier doubted they could address ERL’s medical concerns. The case plan called on Johnny to “acknowledge any substance abuse problems” and to “address domestic violence issues,” but he signed it under protest. He wrote that he did not wish to complete anything in the [ Scase plan.
 

 At the disposition hearing on September 22, the only witness was Ms. Barganier. She testified that DNA tests excluded Eddie as ERL’s father, so OCS dropped Eddie from the case plan. She also testified that Johnny never asked for custody of the child, but instead wanted his sister Christine and niece Marshay, who live in Homer, to take care of ERL. Their house was satisfactory,, but Christine worked and Marshay was disabled, so they could not provide adequate care for the child.
 

 Johnny objected to the admission of the report and case plan. He argued that the
 
 *288
 
 background check and drug screen were obtained in violation of his due process rights, as there had been no adversarial hearing and no court order authorizing this invasion of his privacy. OCS argued that Johnny could have refused the drug screen, but submitted to it without objection at the time. The court stated that drug screens and background checks would not hurt anyone who wanted to be involved in the raising of a child; it admitted the report and case plan.
 

 On cross-examination, Ms. Barganier admitted there was no court order for Johnny’s drug screen or background check, and that he had not been implicated in the child abuse. She reiterated that Johnny never asked for custody of ERL.
 

 The court found a substantial, immediate danger to the health of ERL, warranting his adjudication as a child in need of care and continued custody with OCS. Johnny has appealed the resultant judgment of disposition.
 

 |
 
 ^Discussion
 

 By his first assignment of error, Johnny urges the court erred in considering evidence obtained in violation of his due process rights at the disposition hearing. He concedes that under La. Ch. C. art. 625, prior to disposition a parent is required to assist in the creation of a proposed case plan and keep the state informed of his whereabouts. He also concedes that under Art. 627, the court may issue a protective order wherein a parent must perform or refrain from certain acts during the pendency of the proceedings. He contends, however, “There are no provisions that authorize OCS to perform drugs screens or unwarranted background checks on parents prior to adjudication and disposition.” These measures were unwarranted, he submits, because he was never implicated in the child abuse of ERL. He argues that blood testing is a search and seizure under La. Const. Art. 1, § 5.
 
 State in Int. of J.M.,
 
 590 So.2d 565 (La.1991). He concludes that the background check and drag screen, conducted without due process, should have been suppressed.
 

 The state responds that the parent must assist in the creation of a proposed case plan. La. Ch. C. art. 625. The state also submits that the court properly admitted evidence that was relevant to ERL’s best interest.
 

 The general duty to assist in the state’s investigation of a child in need of care is delineated in La. Ch. C. art. 612, which provides in part and with emphasis added:
 

 Art. 612. Assignment of reports for investigation and assessment
 

 A. (1) Upon receiving a report of abuse or neglect of a [ -,child who is not in the custody of the state, the local child protection unit of the department shall promptly assign a level of risk to the child based on the information provided by the reporter.
 

 [[Image here]]
 

 B.
 
 All persons,
 
 including without limitation mandatory and permissive reporters,
 
 shall cooperate fully with investigative procedures,
 
 including independent investigations and psychological evaluations of the child initiated by the parent on behalf of the child. The provisions of this Paragraph shall not require the disclosure of any communications between an attorney and his client or any confession or other sacred communication between priest, rabbi, duly ordained minister, or Christian Science practitioner and his communicant.
 

 The parent’s duty to cooperate in the preparation of the case plan is established by La. Ch. C. art. 625, which provides in part:
 

 
 *289
 
 Art. 625. Advice of rights and responsibilities of parents, counsel, and department; absent parents
 

 [[Image here]]
 

 B. If the child is continued in the custody of the state, the court shall advise the parents of:
 

 [[Image here]]
 

 (2) Their responsibility to cooperate in preparing a ease plan and otherwise in meeting the needs of then- child, and if their child cannot return home safely, to assist the child’s adjustment to other caretakers, and them obligation to contribute to the cost of care and treatment of them child as provided in Article 685.
 

 These articles plainly require the parent to assist the state in investigating a report of a child in need of care and to cooperate with the state in drafting a case plan. Specifically, Ms. Barganier asked Johnny to submit to a criminal background check and drug screen; these measures easily fall within the father’s duties under Arts. 612 and 625. We recognize | ethat Johnny was not personally implicated in the abuse that started this case; however, he admitted being jailed for striking the child’s mother, having five other children and living off SSI. These facts were sufficient for the investigator to request the background check and drug screen, as Johnny obviously wanted some involvement with ERL. At the disposition hearing, the court agreed that Ms. Bargainer's requests sewed the child’s best interest; this conclusion is no abuse of discretion.
 

 We also note that Ms. Barganier testified, and Johnny did not dispute, that Johnny voluntarily complied with her requests. He did not timely object or seek a protective order and hearing under La. Ch. C. art. 618. Even if he had, given the requirements of Arts. 612 and 625, he has not shown that he could have avoided cooperating in the investigation. On this record, we see no denial of due process.
 

 By his second assignment of error, Johnny urges the court erred in admitting unreliable hearsay at the disposition hearing. He concedes that under La. Ch. C. art. 680, the case plan is admissible at the hearing, but asserts that any hearsay must be reliable before it can be admitted. He reiterates his claim that the background check and drug screen were inadmissible.
 

 The state responds that the case plan is specifically admissible under Art. 680. We agree. This article provides:
 

 Art. 680. Disposition hearing; evidence
 

 The court shall consider the report of the predisposition investigation, the case plan, any reports of mental evaluation, and all other evidence offered by the child or the state relating to the proper disposition. The court may consider evidence |7which would not be admissible at the adjudicative hearing.
 

 In order to determine the placement of a child, the court must be made aware of all circumstances of the child’s situation, including the case plan, the predisposition report and hearsay.
 
 State in hit of CW v. Womack,
 
 28,310 (La.App. 2 Cir. 2/28/96), 669 So.2d 700. Since Art. 680 expressly makes the case plan admissible, and Johnny failed to prove any denial of due process in its preparation, we find no abuse of discretion. The assignments of error lack merit.
 

 Conclusion
 

 For the reasons expressed, the judgment of disposition is affirmed. All costs are to be paid by Johnny Carter.
 

 AFFIRMED.