# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

## DOCKET NUMBER
## 2025 CJ 0995

## STATE OF LOUISIANA
## IN THE INTEREST OF A.N.

Judgment Rendered: MAR 0 3 2026

\* \* \* \* \*

ON APPEAL FROM THE
JUVENILE COURT, DIVISION B
EAST BATON ROUGE PARISH, STATE OF LOUISIANA
DOCKET NUMBER 118,161

HONORABLE GAIL GROVER, JUDGE PRESIDING

\* \* \* \* \*

| | |
|---|---|
| Aidan C. Reynolds<br>Baton Rouge, Louisiana | Attorney for Defendant-Appellant<br>A.N. (Mother) |
| Hillar C. Moore, III<br>District Attorney<br>Harry Landry<br>Assistant District Attorney<br>Baton Rouge, Louisiana | Attorneys for Plaintiff-Appellee<br>State of Louisiana |
| Kimberly Avery<br>Gabrielle McKarry<br>Baton Rouge, Louisiana | Attorneys for Appellee<br>Louisiana Department of Children<br>and Family Services |
| John J. Mason<br>Barry S. Ranshi<br>Kenner, Louisiana | Attorney for Defendant-Appellee<br>J.N. (Father) |
| Courtney Skidmore<br>Baton Rouge, Louisiana | Attorney for Minor Child, A.N. |

BEFORE: McCLENDON, C.J., GREENE, and STROMBERG, JJ.

**GREENE, J.**

In this child in need of care proceeding, a mother appeals a judgment of disposition ordering that her then one-year-old daughter remain in the custody of the State of Louisiana, Department of Child and Family Services (DCFS), until her eighteenth birthday. After review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

J.N, the father, and A.N, the mother, married in 2018.[1] F.N., their first child, was born on August 11, 2019. D.N., their second child, was born on March 30, 2022. Approximately eight weeks later, on May 27, 2022, D.N. died, and an East Baton Rouge Parish Coroner later determined that his death was a homicide due to blunt force injuries to his head. The father and mother were arrested, and, on March 8, 2023, a grand jury indicted them on charges of second degree murder and cruelty to a juvenile. *See State v. Noehl*, 2024-01224 (La. 6/27/25), 413 So.3d 360.

On April 13, 2023, the mother gave birth to the couple's third child, also with the initials A.N. The next day, April 14th, DCFS received a report of "Neglect/Dependency" concerning A.N. and opened an investigation. Based on the pending criminal charges against the parents for D.N.'s unexplained death, DCFS determined the parents' continued custody of A.N. was not in her best interest and sought temporary custody of A.N. On April 14th, the juvenile court issued a verbal order placing A.N. in DCFS's custody; on April 15th, DCFS placed A.N. with foster parents; and, on April 17th, the juvenile court signed an instanter order placing A.N. in DCFS's provisional custody pending further proceedings. The juvenile court also appointed the Child Advocacy Program to represent A.N. in the proceedings; appointed the local Court Appointed Special Advocates program to assign a volunteer to advocate for A.N.; referred the parents to the Indigent Parent Program for representation; ordered DCFS to provide its investigation report to the District Attorney's Office; and scheduled a Continued Custody Hearing, which after a continuance, was held on April

---

[1] To protect the identity of the minor children in this child in need of care proceeding, we use initials to reference the parents and minor children. Uniform Rules – Courts of Appeal, Rules 5-1 and 5-2. Because the mother and the couple's third child share the same initials, "A.N.," we will refer to the parents as "father" and "mother" and to the third child as "A.N."

2

28, 2023. At that hearing, evidence was introduced and the juvenile court determined there were reasonable grounds to believe A.N. was a child in need of care and that continued custody with DCFS was in her best interest. The juvenile court ordered the assistant district attorney to file a petition within thirty days. At some point, the parents began bi-monthly supervised visitation with F.N. and A.N. at the DCFS office.

On May 2, 2023, the State filed a petition seeking to have A.N. adjudicated a child in need of care under La. Ch.C. arts. 603, 606(A)(2), and 606(A)(5). On September 21, 2023, the juvenile court held an adjudication hearing, determined A.N. was a child in need of care under La. Ch.C. art. 606(A)(5), and assigned the matter for a disposition hearing, which was held on January 9, 2024. At the disposition hearing, the juvenile court ordered that A.N. remain in DCFS's custody until her eighteenth birthday, approved DCFS's October 16, 2023 case plan as in A.N.'s best interest, and advised the parents of their obligation to cooperate with DCFS and to comply with the case plan. The juvenile court also advised the parents that DCFS could file a petition for termination of their parental rights upon several bases, including their failure to make significant measurable progress toward achieving case plan goals or to correct the conditions requiring the child to be in need of care. On March 18, 2024, the juvenile court signed a judgment of disposition memorializing its ruling.

The mother appeals the adverse judgment. In a single assignment of error, she contends the juvenile court clearly erred in adjudicating A.N. as a child in need of care under La. Ch.C. art. 606(A)(5), because there is no evidence in the record that the mother committed any criminal conduct against A.N. or any other child. Under La. Ch.C. art. 330(B), the mother's appeal of the judgment of disposition includes all errors assigned concerning the adjudication and disposition. *State in Interest of A.S.*, 2019-0248 (La. App. 1 Cir. 9/4/19), 285 So.3d 1129, 1134.

We note that the father is not a party to this appeal – he unexpectedly passed away on May 22, 2025. *State v. Noehl*, 413 So.3d at 364.

3

## DISCUSSION

Under La. Ch.C. art. 606(A)(5), a child may be adjudicated in need of care if the State proves that the conduct of the parent, *either as principal or accessory*, constitutes a crime against the child *or against any other child.* Subsection (A)(5) provides an intermediate ground that allows the State to step in and protect a child who may be at a substantial risk of being abused or neglected without having suffered actual abuse himself. *State ex rel. K.B.*, 32,350 (La. App. 2 Cir. 5/5/99), 737 So.2d 150, 153. A crime against the child, as referenced in La. Ch.C. art. 606(A)(5), includes the commission of homicide and cruelty to juveniles, as provided by federal or state statute. La. Ch.C. art. 603(12)(a) and (o). Louisiana law provides that second degree murder and cruelty to juveniles are crimes. *See* La. R.S. 14:30.1(A)(1) and (2); La. R.S. 14:93(A)(1) and 14:93.2.3(A)(1). Further, Louisiana law defines a "principal" as a person concerned in a crime's commission, whether present or absent, and whether he directly commits the act constituting the offense, aids and abets in its commission, or directly or indirectly counsels or procures another to commit the crime. *See* La. R.S. 14:24. And, Louisiana law defines an "accessory after the fact" as a person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony and with the intent that he avoid punishment. *See* La. R.S. 14:25.

In a child in need of care proceeding, the State must prove the allegations of the petition by a preponderance of the evidence. La. Ch.C. art. 665. It is not the State's duty to prove its case beyond a reasonable doubt, by clear and convincing evidence, or to disprove every hypothesis of innocence. *State ex rel. L.B.*, 2008-1539 (La. 7/17/08), 986 So.2d 62, 64. The juvenile court is vested with vast discretion in child in need of care cases. *State in Interest of A.M.*, 2024-1255 (La. App. 1 Cir. 5/30/25), 417 So.3d 909, 913. The juvenile court is in a better position to evaluate the best interest of a child because of its superior opportunity to observe the parties and witnesses who testified at trial. *Id.* On review, an appellate court will not disturb a trial court's decision absent an abuse of discretion. *See Id.*; *State in Interest of C.K.*, 2016-0305 (La. App. 1 Cir. 9/1/16), 2016 WL 4586039, *3. Further, an appellate court

4

may not set aside a juvenile court's factual findings unless they are manifestly erroneous or clearly wrong. *State in Interest of A.M.*, 417 So.3d at 913; *State in Interest of C.R.J.*, 2022-0544 (La. App. 1 Cir. 11/17/22), 356 So.3d 1080, 1088.

Herein, the State presented testimonial and documentary evidence in support of its child in need of care petition at the September 21, 2023 adjudication hearing. The State's witnesses were Rashika Dotson, a DCFS supervisor; Lt. Marcus Sylvester, an East Baton Rouge Parish Sheriff's officer; and Dr. Yen Van Vo, an East Baton Rouge Parish Deputy Coroner. The State's documentary evidence included DCFS case plans as to A.N. and F.N., psychological evaluations of the parents, Dr. Vo's forensic pathology report as to D.N., an East Baton Rouge Parish Coroner's report, and a copy of the East Baton Rouge Parish grand jury indictment charging the parents with crimes against D.N.

Rashika Dotson, the DCFS supervisor, testified that she investigated the circumstances surrounding D.N.'s death. After DCFS received a report on May 24, 2022 of a hospitalized infant with unexplained head injuries and rib fractures, Ms. Dotson went to the hospital where she saw D.N. and spoke to medical staff, D.N.'s parents, F.N., and D.N.'s paternal uncle and aunt. She learned that D.N. had a skull fracture, no brain activity, multiple rib fractures that appeared fourteen to twenty-eight days old, and also was on a ventilator. She also learned that the parents were D.N.'s only caretakers, he had not been in anyone's else care, and the parents had no explanation for his injuries. Based on this information, DCFS sought and was granted custody of both D.N. and F.N. by a juvenile court judge on May 26, 2022. As earlier noted, D.N. died on May 27th. DCFS placed F.N. in the custody of his paternal uncle and aunt.

Lt. Sylvester, who worked in the East Baton Rouge Parish Sheriff's Office Homicide Division, testified that, on May 24, 2022, after learning that D.N.'s injuries were life threatening, he went to the hospital and interviewed the parents. The mother stated that, earlier that day, she was asleep at the family home when D.N. "went into some type of distress." She also stated D.N. had no prior falls or injuries. According to Lt. Sylvester, the father, who was supervising F.N. and D.N., saw D.N. "kind of had

5

a little reflux" and then he stopped breathing.[2] The father woke the mother, performed CPR on D.N., and they called 911. The father also told Lt. Sylvester that D.N. slid out of a rocker about two weeks earlier. He also stated that he and the mother were the only ones caring for D.N. since his birth, no other people were coming in and out of the home, D.N. had had no babysitters, and had not gone to a daycare facility. Following D.N.'s death on May 27, 2022, hospital personnel told Lt. Sylvester that D.N's injuries were not accidental and an autopsy confirmed these findings. After unsuccessfully attempting to talk to the parents again, Lt. Sylvester arrested them on June 1, 2022, at which time they invoked their constitutional right to counsel and right against self-incrimination. During his testimony, Lt. Sylvester admitted that he had no direct evidence that either parent intentionally caused D.N.'s injuries.

Dr. Yen Van Vo, the East Baton Rouge Parish Deputy Coroner and a forensic pathology expert, conducted the autopsy of D.N. on May 31, 2022. She discovered that D.N. sustained head injuries, including swelling and bleeding in his scalp and brain, a large fracture in the right side of his skull, bleeding along his spinal cord and in both eyes, a bruised back, and fractured ribs. Most of D.N.'s injuries appeared to have been sustained within a few days before his death, but his rib fractures were beyond two weeks old, and certain cranial hemorrhages and skull fractures were at varying stages of healing. Dr. Vo opined that the pattern of D.N.'s injuries was consistent with an "inflicted" event, rather than an accidental event, and that his death was a homicide caused by blunt force injuries to his head. She stated that D.N.'s injuries were unlikely caused by a fall from a rocker, his back and rib injuries were unlikely caused by the father's or EMT's resuscitation efforts, and his rib injuries were very unlikely to have occurred during his birth. She admitted that, although a single skull fracture could result from an older child dropping D.N. onto a concrete floor, such could not have caused the degree of injuries sustained by D.N. She admitted she did not know who inflicted D.N.'s injuries.

---

[2] Devon Relle with Children's Hospital Pediatric Intensive Care Unit in New Orleans reported D.N.'s injuries to the East Baton Rouge Parish Coroner's Office on May 27, 2022. According to Devon, the father stated that, on May 24th, he was feeding D.N. when D.N. began to "gurgle and turn blue."

6

At the conclusion of the hearing, the juvenile court ruled that the State had carried its burden[3] of proving A.N. was a child in need of care under La. Ch.C. art. 606(A)(5). The juvenile court noted Lt. Sylvester's testimony that the parents were D.N.'s sole caretakers and knew of no other injuries to him and Dr. Vo's conclusion that D.N.'s death was a homicide. The court also noted the different healing stages of D.N.'s multiple injuries were inconsistent with the possibility that a one-time fall caused those injuries. The court noted that the parents had been criminally indicted for D.N.'s death but pointed out that the subject adjudication hearing was not a criminal matter where the State's burden was beyond a reasonable doubt. The juvenile court then concluded that the State proved by a preponderance of the evidence that A.N. was a child in need of care.

The paramount concern in all child in need of care proceedings is the health, welfare, safety, and best interest of the child. *See* La. Ch.C. art. 601; *State ex rel. L.B.*, 986 So.2d at 64; *State in Interest of A.S.*, 285 So.3d at 1134. We first note that the State did not have to prove the parents' conduct caused actual harm to A.N., because La. Ch.C. art. 606(A)(5) allows the State to step in and protect a child who may be at risk because her parent committed a crime "against any other child." *See State ex rel. K.B.*, 737 So.2d at 153. Further, the State did not have to prove that either parent inflicted D.N.'s injuries, because La. Ch.C. art. 606(A)(5) allows the State to step in and protect a child who may be at risk because her parent was a "principal or [an] accessory" to a crime committed against any other child. *See* La. R.S. 14:24 and 14:25. Thus, based on the parents' failure to give a reasonable explanation for D.N.'s fatal injuries, and the undisputed evidence that they were his only caretakers during his eight weeks of life, we conclude the juvenile court did not abuse its discretion in finding, and had a reasonable factual basis to determine, that A.N. was a child in need of care under La. Ch.C. art. 606(A)(5), based on the State's proof by a preponderance of the evidence that each parent was either a principal or an accessory to D.N.'s murder.[3] *See State ex rel. L.B.*, 986 So.2d at 64 (although the evidence did

---

[3] In her brief, the mother asserts that the murder charge against her has been dismissed. Assertions made in appellate briefs are not part of the appellate record and are not evidence. *St. Cyr v. St. Cyr,*

not prove that either parent physically abused their child, the evidence did prove the child's injuries were non-accidental, resulted from traumas occurring on separate occasions, and more likely than not did not occur in the manner claimed by the mother).

## CONCLUSION

For the foregoing reasons, we affirm the March 18, 2024 judgment of disposition ordering that A.N. remain in the custody of the State of Louisiana, Department of Child and Family Services, until her eighteenth birthday. We assess costs of this appeal to the mother, A.N.

**AFFIRMED.**

---

2016-0896 (La. App. 1 Cir. 2/21/17), 215 So.3d 283, 286, n.1., *writ denied,* 2017-0511 (La. 3/31/17), 217 So.3d 357.