|, PEATROSS, J.
This appeal arises from the trial court’s adjudication of two minor children, J.B. and W.K., as children in need of care and placing them with two separate foster families. The mother, “Ms. B,” and father, “Mr. B,” both appeal. For the reasons stated herein, the judgment of the trial court is amended and, as amended, is affirmed.

FACTS

Mr. B and Ms. B were married for approximately seven years, from July 20, 1992, to October 28, 1999. One daughter was born of the marriage, J.B., now 6 years old. Ms. B also had a son from a prior marriage, W.K., now 13 years old, who lived with them. After Mr. B and Ms. B separated, on May 13, 1999, Mr. B was given sole custody of both children, with Ms. B’s consent. Ms. B testified that she consented to giving Mr. B custody because she was using drugs at the time and could not take care of the children.[1]
During the summer of 2000, Mr. B asked Ms. B to assist him in caring for the children because he was working nights. During this time, Mr. B was aware that Ms. B was using drugs. While the children were in her custody, Ms. B walked in on W.K. and J.B. “wrestling” on the bed. W.K.’s pants were pulled down to the knees and J.B. was lying on top of him. J.B. was fully clothed. Ms. B yelled at the children to get up and noticed that W.K. was sexually aroused. When questioned by his mother about where he had learned such behavior, W.K. told Ms. B that Mr. B had | {.sexually abused him, including forcing W.K. to perform oral sex on him and to have anal intercourse. Additionally, J.B. told Ms. B that she had walked in on W.K. and Mr. B, both naked, in the bathroom *903 and that Mr. B had yelled at her to go back to her room and take a nap. This prompted Ms. B to file a “Petition for Domestic Abuse Protection” alleging that Mr. B sexually abused W.K As a result of the allegations, the trial court granted temporary custody of the children to Ms. B. Mr. B answered, denying the allegations in the petition, and filed a reconven-tional demand.
On July 25, 2000, a hearing was conducted at which W.K. testified in detail about the sexual encounters with Mr. B. According to W.K., the abuse began when he was six or seven years old and included at least 12 encounters. In addition, Sandra Taylor, a child protection investigator, testified on behalf of the State and validated the suspicion of sexual abuse, stating that J.B. had related to her that' she had walked in on Mr. B and W.K. naked together in the bathroom. Ms. Taylor also testified that her investigation revealed a lack of supervision of J.B. by Mr. B. Finding that the children’s physical and mental health and welfare were endangered by the abuse and neglect, the trial court granted temporary custody of the children to the State. An instanter order to this effect was signed on July 26, 2000. J.B. was temporarily placed with her paternal grandmother, L.B., and W.K. was placed with his maternal aunt, A.B., pending home studies. Child support was ordered payable by both Mr. and Ms. B.
On August 25, 2000, the State filed a petition to adjudicate the children in need of care, which Mr. B answered and denied the State’s claims.
|sThe initial case plan of the Department of Social Services (“DSS”) proposed that Mr. B have no contact with W.K. and the plan was later revised to add that he have no contact with J.B. Mr. B filed an objection to the revised ease plan and later, on December 11, 2000, filed a motion for release of custody of J.B., alleging that the adjudication hearing was not held within 45 days as required by Children’s Code article 659.[2] An adjudication hearing was held on December 18 and 21, 2000.[3]
At the adjudication hearing, conflicting evidence was adduced regarding whether the abuse had taken place and whether J.B. was telling the truth about the sexual encounter she witnessed between her father and W.K. First, Ms. Taylor testified again for the State. She stated that both W.K. and J.B. had been examined by Dr. Ann Springer in June 2000. Dr. Springer diagnosed sexual abuse with physical evidence of anal penetration of W.K., but reported no significant findings regarding J.B. Next, Annette Jefferson, another DSS case worker, testified on behalf of the State. Ms. Jefferson stated that W.K. had also told her of Mr. B’s sexual abuse and that J.B. had related to her the same incident regarding walking in on W.K. and Mr. B that J.B. told to Ms. Taylor and her mother. Ms. Jefferson further testified, however, that, on a recent visit with J.B. and her grandmother, J.B. recanted her story, stating that “daddy did not do sexual abuse to [W.K.],” and further claiming that her brother (W.K.) had |4told her to say that Mr. B had sexually abused him. Despite J.B.’s recantation and the above *904 described evidence presented by Mr. B, both Ms. Taylor and Ms. Jefferson were of the opinion that the sexual abuse had occurred.
The State also attempted to introduce into evidence the report of Dr. Daniel Lo-nowski, a psychologist who evaluated both children and Mr. and Ms. B. The trial court sustained an objection to admission of the report; however, Ms. Jefferson was allowed to testify that J.B. had demonstrated with dolls during her evaluation the position in which she saw Mr. B and W.K. Ms. Jefferson testified that J.B. explained her demonstration by claiming that W.K. had showed her what to do with the dolls before she went into the eváluation. There was also testimony from several witnesses regarding W.K’s propensity to he to get himself out of trouble and that he may have sustained rectal damage from an incident where he allegedly sat on a bathtub stopper and the chain tore the skin.
W.K. also testified at the adjudication hearing, restating the allegations of sexual abuse. He admitted experimenting sexually with J.B. and that he has lied about certain things in his lifetime. W.K. denied telling J.B. to lie for him regarding the abuse and denied having shown her how to position the dolls for her psychological evaluation. He also testified that he had told his mother about the sexual abuse once before, several years prior to the hearing, but nothing had been done about it.
J.B., who was six years old at the time of the hearing, also testified. She stated that W.K. told her to lie about seeing the two naked together and had instructed her to say that she “saw daddy on top of’ W.K. She denied | shaving ever actually seen such and stated “my dad did not do sexual abuse.” When asked if she knew what the phrase “sexual abuse” meant, however, she admitted that she did not know, but continued to state that she knew that her daddy “did not do sexual abuse to [W.K.].” J.B. also testified that her father and grandmother, with whom she was living at the time- of the hearing, were the only people who had talked about “sexual abuse” with her. Finally, she testified that she would like to live with her father and that she would feel safe there.
Apparently, J.B. drew a picture of stick figures during her evaluation with one figure on top of the other to depict how she found her father and W.K. In her testimony, however, J.B. stated that she did that because her brother and mother had told her to do so.
J.B.’s grandmother, L.B., testified that J.B. told her that she did not, in fact, see Mr. B and W.K. “doing it,” but that W.K. had told her to say that she saw them. L.B. also testified that, on several occasions while keeping the children, she has found W.K. and J.B. under the covers “playing” with each other. Specifically, she testified about two incidents where she saw W.K. kissing J.B. on the mouth. L.B. testified that she told Mr. B of these incidents. L.B. also admitted that there had previously been allegations of molestation made against Mr. B by another of her grandsons.
Ms. B testified about the incident where she found W.K. and J.B. in a compromising situation during which she noticed that W.K. was sexually aroused. She described W.K.’s accusations against Mr. B, after which she immediately called the police. An officer and Ms. Taylor came out to interview the children. Ms. B further testified that J.B. did not usually lie | fiand that she really thought the children were telling the truth when they were relating their stories to the police officer. She stated that she can usually look at them and tell if they are lying; specifically, she said that W.K. was not giving any “sig *905 nals” that he was not telling the truth about the sexual abuse. Ms. B admitted, however, that she had caught W.K. lying many times.
Ms. B testified that she could not remember W.K. having ever told her before about any sexual abuse; however, she admitted that, during that time, she was using drugs which affected her ability to remember things. Ms. B stated that she would have no problem with Mr. B having custody of J.B.; she did not feel that J.B. would be in any danger with him.
Mr. B was the final witness at the hearing and adamantly denied any inappropriate behavior with W.K. He stated that W.K. lied frequently and may have fabricated the allegations to keep from getting in trouble for being caught with his sister in sexual experimentation or in order to keep his mother from reconciling with him. According to Mr. B, W.K. believed that Mr. B was the reason his mother used drugs and did not want his mother and stepfather to reunite. Mr. B also testified that Ms. B had told him that she also thought W.K. was lying. In explanation of the physical findings of Dr. Springer, Mr. B described the incident with the bathtub stopper being “hung” in W.K.’s rectum and also claimed that W.K. had once inserted a bar of soap into his rectum, which was not expelled for several days. Mr. B further testified that he had found W.K. and one of his male friends in bed together with one hoy on his knees and the other behind him.
17Compliance with the case plan designed by DSS was also a significant issue at the hearing. Mr. B has consistently challenged the inclusion of several of the requirements placed on him, including the following:
1. Mr. B will acknowledge his responsibility of the sexual abuse that occurred with [W.K.] and understand the impact the abuse has had on him.
[[Image here]]
7. Apologize to [W.K.] for the sexual abuse he suffered at his hands.
8. Resolve all criminal matters regarding the above.
Mr. B successfully completed parenting classes, however he refused to participate in any sexual perpetrator assessment or counseling. While he did attend the initial appointment made for him with a pedophile psychologist, he refused to discuss this matter with him and the session was terminated, as were the two following appointments. Mr. B maintains that he will not admit to doing something he did not do.
At the conclusion of the hearing, Mr. B’s counsel asserted the article 659 motion for the first time, stating that he did not intend to waive such motion by participating in the hearing. The trial court, however, agreed with counsel for the State, finding that the motion objecting to the hearing as being untimely under article 659 was moot because evidence had been adduced and was now before the court for consideration. The trial court then concluded that both children were in need of care and ordered their custody to be continued with the State.
On January 16, 2001, Mr. B filed another “Objection to Case Plan, Recommendation for Modification of Plan and Other Incidental Matters” seeking a reduction of child support, offering to comply with portions of the | Scase plan and requesting the return of J.B. to his custody. The disposi-tional hearing was held on January 16, 2001. At that time, Ms. Jefferson testified regarding the compliance of both parties with the DSS case plans designed for each of them. Ms. B had complied with all aspects of the case plan except for the requirement that she cease all contact with Mr. B. It was Ms. Jefferson’s opinion that *906 contact with Mr. B, and a possible reconciliation between Mr. and Ms. B, endangered the children; and, therefore, the children should not be returned to Ms. B.[4]
Ms. Jefferson further stated her opinion that neither child should be returned to Mr. B because he refused to comply with the portions of the case plan requiring that he take responsibility for sexually abusing W.K., that he apologize to W.K for the abuse and that he attend a sexual perpetrator assessment. Ms. Jefferson opined that Mr. B’s offer to comply with all aspects of the case plan except for an admission of sexual abuse and to apologize for any “hurt” he had caused W.K. without an acknowledgment of sexual abuse was not sufficient compliance with the case plan to justify returning J.B. to his custody. On the other hand, Mr. B testified about his willingness to provide J.B. with professional help if necessary and assured the court that no harm would come to her in his custody. Ms. B testified lending her support to J.B.’s return to her or Mr. B’s custody and told the trial court that she would take preventive measures to ensure that the children would not be left alone together. She expressed her belief that the ^siblings should be allowed to live in the same household and develop a normal sibling relationship.
The trial court’s judgment on disposition reduced the child support payable by Mr. B and ordered that he have no contact with W.K. His contact with J.B. was ordered to be supervised and for a period of not more than one time per month for a period not in excess of two hours per month. The children are currently in separate foster homes and remain under the control of the State.

DISCUSSION

ISSUES RAISED BY MIR. B

Timeliness of adjudication hearing

Mr. B argues that the trial court erred in failing to release J.B. when the adjudication hearing did not commence within 45 days of the filing of the petition as required by La. Ch. C. art. 659. Subsection C of that article provides the effect of a violation of the time limitation:
C. If the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and may dismiss the petition.
As previously stated, the article 659 motion was not raised to the trial court until the conclusion of the adjudication hearing. The trial court found, and we agree, that once evidence was adduced and placed before the trial court for consideration, any motion that the hearing was untimely was moot. Likewise, we find that the motion is moot because W.K. and J.B. are currently in the custody of the State pursuant to a disposition order. This assignment is without merit.

^^Retroactive child support reduction

On July 25, 2000, in the civil proceedings between Mr. and Ms. B, Mr. B was ordered to pay child support in the amount of $486 per month for support of the children in foster care. Judgment was signed on August 7, 2000, stating that the child support amounts payable by Mr. and Ms. B shall “be divided for each child.” On September 18, 2000, Mr. B filed a *907 motion in the juvenile court proceedings for reduction of child support, alleging that the trial court in the civil proceedings had miscalculated the amount of support payable by him. The motion stated that “upon information ... [the $486 per month] child support calculation was based upon the payment of child support for two children ... the child support should be reduced to $420 per month, retroactive to the filing of this motion.” The motion was set for hearing on December 18, 2000, which is also the date on which the adjudication was to be heard. At the hearing, however, Mr. B failed to present any evidence on the issue of child support. The adjudication hearing went forward and was concluded on December 21, 2000, again without any mention of Mr. B’s motion to reduce child support.
Subsequently, on January 16, 2001, Mr. B filed a second “Objection to case Plan, Recommendation for Modification of Plan and other Incidental Matters” wherein he reurged his motion for reduction of child support and objected to the motion not being heard at the December 18, 2000 hearing. Counsel for Mr. B presented his evidence on the issue at the disposition hearing on January 18, 2001. At the conclusion of the disposition hearing the trial court ordered child support payable by Mr. B in the amount of $420 Inwhich was the amount calculated by Mr. B for support of J.B. only. The judgment was silent as to the date the reduction would take effect.
Regarding Mr. B’s first argument that the issue was not heard on the previous hearing date, the trial court noted that no evidence was presented on the issue at that hearing. Likewise, we find no merit to Mr. B’s objection that the child support issue was not heard on December 18, 2000, because he presented no evidence on the issue on that date.
Mr. B’s second argument, that the trial court erred in failing to make the reduction in child support retroactive to the date of the initial support award, July 25, 2000, fails because Mr. B never made this request to the trial court. As previously stated, in his motion for reduction of child support, Mr. B requested that the reduction be retroactive to the date of the filing of the motion. See La. R.S. 9:310 and 315. Mr. B raises the argument that the award should be retroactive to the earlier date of July 25, 2000, for the first time on appeal; and, therefore, it will not be considered. See Matthews v. Pete Mercer Construction, et al., 33,085 (La.App.2d Cir.4/7/00), 758 So.2d 379, writ denied, 00-1218 (La.6/16/00), 764 So.2d 965; Risinger v. State Farm Mutual Automobile Insurance Co., 29,023 (La.App.2d Cir.6/18/97), 711 So.2d 293.

Consideration of Dr. Lonowski’s report

Mr. B challenges the trial court’s consideration of the contents of Dr. Lo-nowski’s report on the psychological evaluations conducted by him on Mr. and Ms. B and both children. Although the trial court sustained an objection to the admission into evidence of the report, the report was attached to a letter from DSS to the trial judge which reported on the | ^parties’ progress in complying with the case plan. In addition, certain excerpts from the report were included in other correspondence to the trial court.
Counsel for Mr. B objected to the trial court’s consideration of this evidence at the close of the adjudication hearing. The trial court’s response was as follows:
... I note your objection, but my decision was based upon the testimony that I heard from the stand from Ms. Taylor, from [Ms. B] and from [Mr. B] and the other witness, W.K. who testified. While those things were filed in the record, everything that I stated for the *908 record that my opinion was based upon was testified to by a witness in this particular court. I believe it will be supported by the record.
The trial court made clear that it found sufficient evidence, even in the absence of Dr. Lonowski’s evaluations, that the best interest of the children would be served by continuing their custody with the State. As discussed later in this opinion, we find that the record supports the conclusion of the trial court. As such, we find that any error in the trial court’s consideration of the report was harmless.

Objections to the requirements of the case plan

As previously stated, the case plan imposed requirements on Mr. B regarding his acknowledgment of sexual abuse and apology to W.K. The case plan also required Mr. B to “resolve all criminal matters regarding” the sexual abuse. Mr. B refused to admit to the abuse and, therefore, was found noncompliant with the case plan. He now argues that requiring him to resolve all criminal matters and admit to sexual abuse violates his constitutional due process rights. Mr. B further argues that his acceptance of responsibility for sexual abuse would amount to an admission which 113could be used against him in a criminal prosecution for acts which he steadfastly denies.
While we acknowledge that the requirements of the case plan place Mr. B in a tenuous position, we cannot agree that the case plan violates his constitutional rights or is unreasonable under the facts of this particular case. Mr. B was apprised of his Fifth Amendment privilege against self-incrimination before he testified at the hearing on July 25, 2000. Mr. B waived this privilege, choosing to testify regarding the allegations of sexual abuse. We find the requirements imposed on Mr. B to be reasonable under the facts of this case. This assignment is, therefore, without merit.

Standard of proof and least restrictive placement of J.B.

In its reasons for judgment following the adjudication hearing, the trial court did not expressly state the legal standard by which it judged the evidence presented at the hearing. Mr. B argues that the trial court applied the incorrect standard of preponderance of the evidence, rather than the correct standard of proof by clear and convincing evidence. In support, Mr. B cites State in the Interest of A.C., 93-1125 (La.10/17/94), 643 So.2d 743, cert. denied, A. St. P.C. v. B.C., 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995), wherein the supreme court held that, in cases involving the Post-Separation Family Violence Relief Act[5], proof of sexual abuse must be by clear and convincing evidence if the abusing parent is to be deprived of visitation or contact with the child. First, we note that, although the trial court failed to articulate the standard under which it was operating, we find that this record clearly and convincingly supports a | ^finding that Mr. B sexually abused W.K. Based on this finding, it was not clearly wrong for the trial court to further determine that J.B. was at risk of being abused if in her father’s custody. Further, J.B. has been placed with relatives during the entirety of these proceedings. She is currently living with Mr. B’s aunt. We find that J.B.’s placement is the least restrictive under the circumstances of this case.
Second, Mr. B argues that the least restrictive rules embodied in La. R.S. 9:341, instead of the Post-Separation Family Violence Relief Act, La. R.S. 9:364, *909 should apply to this case. R.S. 9:841 states, in- pertinent part:
§ 341. Restriction on visitation
A. Whenever the court finds by a preponderance of the evidence that a parent has subjected his or her child to physical abuse, or sexual abuse or exploitation, or has permitted such abuse or exploitation of the child, the court shall prohibit visitation between the abusive parent and the abused child until such parent proves that visitation would not cause physical, emotional, or psychological damage to the child. Should visitation be allowed, the court shall order such restrictions, conditions, and safeguards necessary to minimize any risk of harm to the child. All costs incurred in compliance with the provisions of this Section shall be borne by the abusive parent. (Emphasis ours.)
La. R.S. 9:364 states, in pertinent part:
D. If any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds, by a preponderance of the evidence, that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the children’s best interest. (Emphasis ours.)
11sMr. B was not prohibited from visiting or having any contact with J.B. Moreover, we note that both of these statutes apply to visitation between the abusive parent and the abused child. The trial court in the present case did not state in its reasons for judgment that it was making a visitation determination regarding Mr. B and J.B. (not the abused child) under either of those statutes. Further, the trial court did not make a determination of whether or not Mr. B had satisfied the burden of the abusive parent required by 9:341, i.e., to show that no physical, emotional or psychological damage would occur to J.B. if supervised visitation was allowed. Regarding the burden under 9:364, again, we note that visitation between Mr. B and J.B. has not been prohibited. Had the trial court applied the more restrictive provision of 9:364, it would have been required to prohibit any visitation with Mr. B due to Mr. B’s refusal to participate in a sexual perpetrator treatment program.[6]
Finally, we agree, however, with Mr. B’s argument that he should be entitled to more liberal visitation with J.B. Currently, he is allowed one supervised visit per month, not to exceed two hours. In addition, there is testimony in the record that he is not allowed telephone contact with J.B. due to the personal preference of his aunt, with whom J.B. resides and who does not want Mr. B to telephone her home. Despite the fact that Mr. B continues to refuse to comply with the requirements of the case plan, the goal of the plan remains reunification. In order to facilitate that goal, we find that Mr. B should be allowed longer and more frequent supervised 11fivisitation with J.B. Mr. B shall be entitled to four supervised visitations per month, preferably one day per week for two hours, not to exceed 8 hours per month.

Insufficient evidence of sexual abuse

La. Ch. C. art. 606 sets forth the grounds for a child in need of care as a *910 child who is the victim of abuse or neglect. La. Ch. C. art. 603(1) defines abuse as:
... any one of the following acts which seriously endanger the physical, mental or emotional health of the child: ...
(c) the involvement of the child in any sexual act with a parent or any other person, or the aiding or toleration by the parent or caretaker of the child’s sexual involvement with any other person.
Mr. B argues that there is insufficient evidence on which to base a finding of sexual abuse of W.K. We disagree. It is well-settled that an appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State in the Interest of D.T. v. K.T., 29,796 (La.App.2d Cir.6/18/97), 697 So.2d 665; State in the Interest of T.D. v. Webb, 28,-471 (La.App.2d Cir.5/8/96), 674 So.2d 1077. Great weight is attached to the exercise of the trial judge’s discretion, which will not be disturbed on review if reasonable men could differ as to the propriety of the trial court’s action. The discretion afforded the trial court, however, must be exercised in whole-hearted good faith and be guided by the statutes, not by what the court’s private opinion of what the statute ought to be. Where the exercise of discretion is arbitrary and not judicial, and the judgment is unjust, it will be set aside. State v. Talbot, 408 So.2d 861 (La.1980) on rehearing; State, in the Interest of D.T., supra. Further, where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. In re A.J.F. Applying for Private Adoption, 2000-0948 (La.6/30/00), 764 So.2d 47; Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); In re: M.M. de St.G., wife of and PBS, Applying for Private Adoption of K.N.K., 97-655 (La.App. 5th Cir.11/25/97), 705 So.2d 220. Where the factfinder is presented with two permissible views of the evidence, the factfinder’s choice between them is not clearly wrong. Rosell, supra.
In manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court who is in the unique position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. In re A.J.F. Applying for Private Adoption, supra; Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.
The trial court was faced with conflicting testimony of several witnesses, including J.B., regarding whether the abuse took place and the veracity of W.K. Most significantly, W.K. remained consistent during the several hearings in these proceedings testifying that Mr. B forced him to engage in oral and anal sex. J.B. originally supported W.K’s allegations with an eyewitness account of the two in an inappropriate sexual act, but | islater, after being placed in Mr. B’s mother’s home, recanted her story. Despite admitting that she did not know what the phrase “sexual abuse” meant, J.B. insisted that “daddy did not do sexual abuse on W.K.” The case workers who testified believed W.K. and J.B.’s first story. In addition, Dr. Springer’s examination of W.K. revealed physical evidence of sexual abuse. Mr. B denied the allegations and Ms. B expressed doubt about her son’s truthfulness, but stated that he showed no signals of lying when he told his story to Ms. Taylor. The trial court made reasonable credibility determinations which will not be disturbed on appeal. In *911 re A.J.F. Applying for Private Adoption, supra; Rosell, supra; Arceneaux, supra. In addition, as previously stated, the trial court found sufficient evidence to adjudicate W.K. and J.B. in need of care, notwithstanding the allegations of sexual abuse. We find no manifest error in the trial court’s finding in this regard. This assignment is without merit.
ISSUES RAISED BY MS. B

Return of J.B. to Mr. B

Ms. B argues that, because there were no allegations or evidence of abuse of J.B., she should be returned to Mr. B. Both Mr. and Ms. B argue that any abuse of W.K. does not mean that J.B. is in danger of being abused as well. We find this argument unpersuasive. The evidence in this record supports the conclusion that J.B. will be at risk of sexual abuse if placed in the custody of Mr. B, either as a victim or witness to the sexual abuse of another. Further, if placed in the custody of Ms. B, it is highly likely that Mr. B will have contact with J.B., which, again, would place her at risk.
|1flLa. Ch. C. art. 606(A)(5) provides the following ground for finding that a child is in need of care:
(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child of that parent. (Emphasis ours.)
The comments to this subsection state that, “[b]ecause the commission of a criminal act has long been recognized as sufficient cause to justify permanent termination of parental rights, Ch. C. art. 1015(2), the same misconduct should be recognized as sufficient to justify a Child in Need of Care proceeding.” In State ex rel. K.B., C.B. and T.B., 32,350 (La.App.2d Cir.5/5/99), 737 So.2d 150, this court reversed the juvenile court’s finding that two siblings of a child who had been the victim of Shaken Baby Syndrome were not in need of care. Similarly, J.B. as the sibling of W.K., is entitled to the protection that this statute was intended to afford children in her position. Moreover, this record contains an abundance of evidence indicating that the sexual abuse of W.K. had a great emotional and psychological impact on J.B. In fact, it is probable that this six-year old girl was subjected to inappropriate sexual play with her older brother as a result of Mr. B’s abuse.
In addition to the reasons discussed above, the Children’s Code provides additional grounds which justify the trial court’s decision not to return J.B. to her father. Neglect is- defined in La. Ch. C. art. 603(14) as:
... the refusal or failure of a parent or caretaker to supply the child with necessary ... care, for any injury, illness, or condition of the child, as a result of which the child’s physical, mental or emotional health is substantially threatened or impaired....
IüqAs previously stated, we find no error in the trial court’s finding sufficient evidence of sexual abuse of W.K. by Mr. B in this case. We also find very significant the fact that Mr. B knew of Ms. B’s drug use, yet still allowed Ms. B to have liberal visitation with the children, including overnight visits. Likewise, Mr. B was aware of W.K’s inappropriate sexual encounters with J.B., yet did nothing except “have a talk with” the children about such behavior. Clearly, nothing was done to prevent such abnormal sexual experimentation as evidenced by the fact that Ms. B found J.B. lying on top of W.K. with his pants down and sexually aroused. This is sufficient evidence of neglect of J.B. to justify adjudicating her in need of care. The trial *912 court did not err in refusing to return J.B. to Mr". B.
Next, Ms. B argues that W.K. should have been returned to her custody. We disagree. W.K. testified that he had told his mother of the sexual abuse several years before the incident where Ms. B caught him in an inappropriate situation with his sister. Ms. B, however, claimed to have no memory of this because she was using cocaine during the time that W.K. claims to have told her about the abuse. If Ms. B was aware of the abuse, she was clearly neglectful in not taking any steps to prevent further abuse. Even if she was unaware of the abuse because of the impaired state of mind caused by her addiction to cocaine, she was neglectful in not providing the necessary care to W.K. to protect him from the abuse. In short, the trial court did not err in finding W.K. to be in need of care and not giving custody of him to Ms. B.

^CONCLUSION

For the foregoing reasons, the judgment of the trial court is amended to allow Mr. B visitation with J.B., supervised by a DSS caseworker, no more than four times per month, preferably one day per week for two hours, not to exceed 8 hours per month. In all other respects, the judgment of the trial court is affirmed. Costs are assessed equally to Mr. and Ms. B.
AMENDED AND, AS AMENDED, AFFIRMED.

. Apparently, Ms. B had drug problems on and off which, along with the death of her father and brother, resulted in her admission to Charter Brentwood in December 2000. W.K. was also admitted to Charter Brentwood during the same time for emotional and behavioral problems. The record also includes receipts indicating that Ms. B pawned items belonging to W.K., including a VCR, Nintendo and bicycle, for money to support her drug habit.

. Article 659 states, in pertinent part, that "[i]f the child is in continued custody pursuant to Article 627, the adjudication hearing shall commence within forty-five days of the filing of the petition.”

. There is some indication in the record that both parties desired to have all juvenile matters heard before the same judge who presided over the civil matters between Mr. and Ms. B. Apparently, in order to achieve that end, the adjudication hearing was continued until December 18, 2000, which exceeds the 45 day period in which the adjudication hearing must be held under article 659.

. Ms. B informed Ms. Jefferson four days prior to the disposition hearing that she had finally decided to terminate all communication and contact with Mr. B. Ms. Jefferson testified that this decision so close to the hearing was not reliable. It was Ms. Jefferson's opinion that more time was needed to observe the parties to ensure that such communication was truly terminated before concluding that Ms. B was in compliance with the case plan.

. La. R.S. 9:364, et seq.

. The case plan provides that Mr. B is to have no contact with J.B. until a sexual perpetrator assessment is completed. The judgment approves the case plan with amendments, one of which was to provide Mr. B with limited supervised visitation with J.B.