CARAWAY, J.
| iThis dispute concerns a minor child. The State received a report that the child was a victim of physical abuse. Subsequently, the State sent an investigator to the child’s residence, and the parents were arrested after marijuana was found on the premises. Thereafter, the State filed a petition seeking to have the child adjudicated as a child in need of care. Some months later after trial, the juvenile court ruled that the evidence did not show that the child was in need of care. Finding that the evidence supports this determination, we affirm.

Facts

On November 27, 2015, a person reported to the State of Louisiana, Department of Child and Family Services (“DCFS”), regarding physical abuse/tying or confinement of a two-year-old boy, B.M.[1] In the report, it was alleged that B.M.’s parents left him in a bedroom 90% of the day. It was further alleged that the parents reside in a travel trailer and that the room in which B.M, is locked is only big enough for a full-size bed. It was asserted that the parents neglect B.M. by not caring for his hygiene and that he has very poor speech because the parents do riot communicate with him.
On December 1, 2015, LaShunda Prim (“Prim”), a child protection investigator at *976 the DCFS, escorted by Caddo Parish Sheriff Deputy Mike McConnell, went to the address of B.M.’s parents as provided in the report. When they entered the trailer, Deputy McConnell arrested the parents after marijuana was found inside. The mother was charged with possession of marijuana, illegal use of a controlled dangerous substance in the presence of | ?a child under 17 years, and prohibited aets-use/possession of drug paraphernalia. The father was charged with the same offenses, except he was charged with a second possession of marijuana offense.
As Deputy McConnell arrested B.M.’s parents, Prim contacted and placed B.M. with his paternal grandmother and step-grandfather. The following day, December -2, 2015, the DCFS filed an instanter order, attached with the affidavit of Prim. The instanter order specified that B.M. would remain placed with his paternal grandmother and step-grandfather pending the custody hearing. The trial court granted this order, issuing temporary custody to the DCFS.
On December 22, 2015, the hearing officer of the juvenile court (“Hearing Officer”), after considering evidence and arguments from the DCFS and the parents, issued recommendations. The Hearing Officer determined that there was reasonable grounds to believe that B.M. was in need of care and continued custody was necessary for his safety and protection. The Hearing Officer granted the parents supervised visitation, but ruled that B.M. remain placed with his paternal grandmother and step-grandfather. The Hearing Officer also instructed the DCFS to develop a case plan and forward it to the parents. On January 12, 2016, the juvenile court adopted and rendered judgment in accordance with these recommendations.
On January 6, 2016, the DCFS filed a petition seeking to have B.M. adjudicated as a child in need of care as defined by La. Ch.C. art. 606, et seq. On March 7, 2016, the DCFS presented the case plan to the juvenile court. In the case plan, the DCFS stated that the goal was reunificiation. |sAt the March 15, 2016 adjudication hearing, Prim, Deputy McConnell, and B.M.’s paternal grandmother each testified.
Prim testified that when she and Deputy McConnell arrived at the address, she saw that the front property was inhabited by B.M.’s paternal grandfather and step-grandmother and that B.M. and his parents resided in a travel trailer in the back of the property. Thereafter, she stated that she noticed that the ground leading to the back of the property and up to the trailer was wet. She said that upon further inspection, she realized that the wetness covering the ground was raw sewage and that it was coming from underneath the trailer. She also claimed that it was impossible to avoid as they walked up to the trailer.
Upon entry, she testified that she saw that the parents were sitting in camping chairs and that B.M. was crawling on the floor. Prim stated that she felt that the trailer was very small and noticed that it had only a living room and a bedroom. She also stated that she saw dirty dishes in the kitchen sink. She testified that the entrance into the bedroom was a half door that stopped at her waist, which she felt would prevent a small child from leaving the room. Inside the bedroom, she stated that there was a mattress and a small pallet next to the mattress. She testified that she believed that due to the small size of the trailer, she did not feel it was a fit location for B.M. to be living. However, she stated that B.M. appeared to be healthy. She testified that B.M. was examined by a pediatrician on December 8, 2015, and his examination revealed he was *977 healthy. She also stated that after the arrest, the parents and B.M. were tested for drugs and the father tested positive for T.H.C., but the mother and B.M. tested negative.
I ¿Deputy McConnell also testified that he saw the raw sewage leading to the trailer and his description of the trailer matched Prim’s. He stated that as soon as he entered the trailer, he noticed that B.M.’s father quickly placed his cell phone on what Deputy McConnell suspected was a marijuana cigarette. He testified that he immediately seized the marijuana cigarette and arrested the parents. Consequently, he stated that they waived their Miranda[2] rights and elected to give statements. Deputy McConnell testified that the father told him that the marijuana cigarette belonged to him, not the mother, and that they never smoked in the presence of B.M. However, Deputy McConnell stated that the mother told him that they had smoked marijuana the day before in B.M.’s presence. Additionally, Deputy McConnell testified that the father gave him a Ziploc bag containing about 3½ grams of marijuana. Similar to Prim, Deputy McConnell also stated B.M. appeared to be well taken care of, describing him as a “little chubby little thing.”
The paternal grandmother testified that when B.M. came into her care on December 1, 2015, he was healthy and did not have poor hygiene. She testified that she took B.M. to the doctor a week after he arrived and that there were no health concerns. She further stated that she had no concerns about B.M. being returned to his parents and that he cries when his parents leave after visitation.
After hearing the testimonies, the court requested the position 'of the attorney representing B.M.:
[B.M.’s attorney]: The child’s position is that this child is not in need of care. When the State initially went out to investigate this matter, |gthey went out to investigate some report of physical abuse, tying, or confinement. [Your honor] heard the evidence. None was presented. There was no finding indicating that physical abuse or tying or confinement of this child occurred.[3]
Thereafter, the juvenile court determined that B.M. was not in need of care, vacated the DCFS’s custody, and returned custody to B.M.’s parents. The court reasoned as follows:'
The court does not find that the evidence warrants an adjudication in this case.
There was a moment, a moment, when the child was in need of care in order to transit from the parents, as they were being arrestéd[,] to [B.M.’s paternal grandmother]; but I don’t find that the evidence in this case warrants a child in need of care adjudication at this time. I would caution [the parents] that if you have not fixed that sewage problem by this time, B.M. need not to be there. So you need to make sure that B.M. stays with [his paternal grandmother] until you have a suitable place for the child to live.
The DCFS has appealed this judgment.

Discussion

The DCFS argues that the denial of the petition to declare B.M. in need of care *978 was manifest error that occurred when the juvenile court failed to observe the principle of accepting as true the uncontradicted testimony of a witness. The DCFS submits that the evidence showed that raw sewage was subject to tracking into the trailer. The DCFS argues that this is a violation of La. R.S. 40:4(6), which prohibits the disposal of sewage in an unsanitary manner, and therefore, it clearly puts B.M. at risk for disease. The DCFS further argues that the evidence shows that marijuana was being used in the presence of B.M., which placed him at additional risk. The |flDCFS cites La. Ch.C. art. 1528(8) for the proposition that drug use in the presence of children is reprehensible and grants juvenile courts jurisdiction over such misdemeanors. Therefore, the DCFS argues that it met its burden of proof that B.M.’s parents committed neglect, thereby making him a child in need of care.
The purpose of Title VI of the Children’s Code, entitled “Child in Need of Care,” is “to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others[.]” La. Ch.C. art. 601; State ex rel. L.M., 46,078 (La.App.2d Cir.1/26/11), 57 So.3d 518. The health, safety and best interest of the child shall be the paramount concern in all proceedings under Title VI. Id.
La. Ch.C. art. 606 sets forth the grounds on which a child can be adjudicated in need of care, and provides, in pertinent part:
A. Allegations that a child is in need of care must assert one or more of the following grounds:
¾? * ⅜
(2) The child is a victim of neglect.
La. Ch.C. art. 603(16) provides, in pertinent part:
“Neglect” means the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition -of the child,, as a result of which the child’s physical, mental, or emotional health and safety is substantially threatened or impaired. Neglect includes prenatal neglect. Consistent with Article 606(B), the inability of a parent or caretaker to provide for a child due to inadequate financial resources shall not, for that reason alone, be considered neglect[.]
Adjudication of a child in need of care is warranted when a parent shows a repeated pattern of placing a child at risk and exposing a child to a lack of adequate shelter. State ex rel. L.M., supra. At the adjudication ^hearing, the state bears the burden of proving by a preponderance of the evidence that the child is a child in need of care. La. Ch.C. art. 665; State in the Interest of L.B., 08-1539 (La.7/17/08), 986 So.2d 62; State ex rel. L.M., supra. It is not the duty of the State to prove its case beyond a reasonable doubt, by clear and convincing evidence, or to disprove every hypothesis of innocence. State in the Interest of L.B., supra; State ex rel. L.M., supra. Where there is conflicting testimony, reasonable evaluations of ex-edibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and infex-ences are as reasonable as those of the juvenile court. Id.; see also Rosell v. ESCO, 549 So.2d 840 (La.1989). If the juvenile court’s findings are reasonable in light of the x-ecord reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, *979 it would have weighed the evidence differently. State ex rel. L.M., supra; see also Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270. Great weight is attached to the exercise of the trial judge’s discretion, which will not be disturbed on review if reasonable men could differ as to the propriety of the trial court’s action. State v. Talbot, 408 So.2d 861 (La.1980); State ex rel. J.B., 35,032 (La.App.2d Cir.5/9/01), 794 So.2d 899.
' From our review of the evidence, we find that the juvenile court did not commit manifest error in finding that B.M. is not in need care.
The DCFS’s proof of the child’s exposure to marijuana was less than clear. Even though the mother told Deputy McConnell that the parents had smoked marijuana in B.M.’s presence the day before Deputy McConnell |8arrested them, this was disputed by the father’s statement. The juvenile court had the discretion to resolve these conflicting statements and reject the mother’s statement. In re A.J.F, supra; Rosell v. ESCO, supra. We cannot say that the juvenile court was clearly wrong in finding that B.M.’s parents did not expose him to marijuana, especially considering that he tested negative for T.H.C. Accordingly, the DCFS failed to show the parents repeatedly placed B.M. at risk for marijuana.
Additionally, the evidence did not show that B.M. was ever exposed to the raw sewage leading to the trailer. The DCFS did not produce any evidence revealing how long the raw sewage was on the ground, or the condition of the parent’s residence thereafter. Therefore, we cannot say the mere presence of the raw sewage outside the trailer on this sole occasion showed the parents committed neglect. Moreover, the DCFS did not produce any evidence as to whether the raw sewage still remains. The juvenile court addressed this concern by telling the parents that if the raw sewage had not been eliminated, B.M. should continue to reside with his paternal grandmother.
Other than these two issues, it is notable that no evidence of physical harm or the tying of the child was presented by DCFS, even though this was the basis of the third party report in the first place.
Most importantly, Prim, Deputy McConnell, and the paternal grandmother each testified that B.M. appeared to be healthy. These sentiments were proven true by B.M.’s medical examination,, which revealed him to be healthy and showed no signs of abuse.
19Finally, we note that the proposed case plan presented by- the DCFS stated that the goal was reunification. Based on our review, and in light of the great discretion afforded to the juvenile court, we find that the DCFS did not produce sufficient evidence to show why reunification under the conditions should be delayed.
Considering the foregoing, we conclude that the evidence supports the finding that B.M. is not a child in need of care. Therefore, under the manifest error standard of review, we affirm the juvenile court’s ruling.

Conclusion

The ruling of the juvenile court is affirmed.[4]
AFFIRMED.
PITMAN, J., dissents with written reasons.

. The initials of the child are used to protect the identity of the minor child. URCA Rules 5-1, 5-2.

. The full citation is Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The attorney appointed to represent B.M. made no mention of the Court Appointed Special Advocate’s report, nor did the State move to enter the report into evidence for the court’s consideration pursuant to La. Ch.C. art. 663.

. Neither the Department of Children and Family Services nór any district attorney’s office shall be required to pay court costs in any child welfare proceeding instituted by such department of district attorney's office. La. R.S. 13:4521(A)(4).